JUDGE SCHEINDLIN

08 CV 5673

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

WILLIAM GORDON, DIN # 95A0033,
ANDRE COMBS, DIN# 74B0737, ROBERT
DIDONATO DIN# 97A4213, DELANO
BROWN, DIN# 81A4887, suing on behalf
of themselves and all others similarly
situated,

               Plaintiffs,

-against-

GEORGE ALEXANDER, CHAIRMAN OF
THE NEW YORK STATE DIVISION OF
PAROLE and THE NEW YORK STATE
DIVISION OF PAROLE

               Defendants.
----------------------------------------X

08CIV.

COMPLAINT



RECEIVED
JUN 2 4 2008
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiffs, through their attorneys FRANZBLAU DRATCH, P.C., complaining of the defendants on behalf of themselves and all others similarly situated, allege as follows:

### INTRODUCTION

1. Pursuant to Executive Law Section 259-i and 9 NYCRR 8006 et seq., inmates serving indeterminate terms may not institute Article 78 Proceedings challenging parole release denials until they have exhausted their administrative remedies.

2. The applicable administrative remedy consists of filing within 30 days a Notice of Appeal to the Appeals Unit of Defendant, New York State Board of Parole, and thereafter perfecting the appeal on or before a date proscribed by the Appeals Unit.

3. Pursuant to 9 NYCRR § 8006.4(c), the Appeals Unit is mandated to render a decision within 120 days from receipt of a perfected appeal. Upon the rendering of a decision affirming a Parole Board's denial of parole release within the proscribed period of

time, an inmate may immediately commence an Article 78 Proceeding challenging the denial

4. Pursuant to applicable case law, in the event that the Appeals Unit fails to render a decision within the proscribed period of time, an inmate may commence an Article 78 Proceeding challenging the parole release denial.

5. For a period of at least the past 10 years, and, upon information and belief for many years prior thereto, the Appeals Unit of Defendant New York State Board of Parole (hereinafter "defendant") has proscribed, implemented and carried out an unofficial policy/practice with respect to the determination of administrative appeals that is illegal, violative of existing statutory and regulatory law, and in derogation of inmate's constitutional due process rights.

6. More specifically, defendant has for the aforesaid period of time (1) failed on a substantially significant preponderance of all perfected appeals to render decisions within the statutory and regulatory mandated period of 120 days; (2) failed to advise inmates filing administrative appeals that in the event a decision is not rendered within the requisite 120 day period of time, Article 78 proceedings challenging their parole denials may thereafter be immediately filed (See Exhibit "A"); (3) failed in a substantially significant preponderance of all perfected appeals to render decisions that consider and apply existing statutory and regulatory factors; (4) rendered written decisions that almost without exception spew generalized principles of statutory, regulatory and case law without applying same to the individual facts and circumstances of each appeal.

7. Pursuant to a New York Freedom of Information Law (FOIL) request dated February 13, 2007, defendants have failed to provide requested documents reflecting the percentage number of administrative appeal filed in the past five (5) years; the number of

administrative appeals that have resulted in a reversal of a denial of parole release; the reversal of a denial of parole and subsequent granting of parole by the Appeals Unit and the basis upon which appeals have been granted.

8. As a consequence of defendant's unofficial and illegal policy/practice, and, in violation and derogation of inmate's statutory, regulatory and due process rights, said inmates are being denied fair consideration of their administrative appeals consistent with mandated statutory and regulatory factors applied thereto.

9. As a consequence of defendant's unofficial and illegal policy/practice, and, more specifically their failure to advise inmate's that the failure to render a decision within the mandated 120-day period permits immediate institution of an Article 78 Proceeding, a substantially significant preponderance of Article 78 proceedings are not instituted by inmates within sufficient time to avert the proceedings being rendered moot by virtue of their reappearance date being reached prior to decisions being rendered on the their petitions.

10. As a consequence of Defendant's unofficial and illegal policy/practice (i.e., the failure to advise inmates that absent a decision being rendered within the mandated 120-day period permits immediate institution of Article 78 Proceedings- a substantially significant preponderance of inmates intending to challenge parole release denials never do so by virtue of the fact reappearance dates are reached prior to decisions being reached on their appeals.

11. By virtue of the foregoing, inmate's serving indeterminate sentences who are eligible for fair consideration of their administrative appeals and who are eligible to challenge parole release denials in Article 78 Proceedings, are not receiving such consideration and are being deprived of their rights to challenge the denials in court.

12. The unofficial policy/practice of defendant's Appeal's Unit has been to unlawfully eliminate or substantially curtail fair consideration of inmates appeals as well as to eliminate the necessary time for such inmates to litigate Article 78 proceedings without having same being rendered moot by subsequent appearances at their reappearance hearings.

13. The plaintiffs' claim that this unofficial illegal policy/practice is a violation of due process and equal protection and is an unconstitutional ex post facto enhancement of the indeterminate sentences imposed upon them by the sentencing courts.

## JURSDICTION AND VENUE

14. This is a civil action authorized by 42 U.S.C. § 1983 for declaratory and injunctive relief to redress the deprivation, under color of state law, of rights, privileges and immunities secured to plaintiff's by Article 1, Section 10, cl. 1 and the Fourteenth Amendment of the United Sates Constitution. Jurisdiction is conferred by 28 U.S.C. §§1331 and 1343.

15. This action is properly filed in the United States District Court for the Southern District of New York, as authorized by 28 U.S.C. §1391, inasmuch as jurisdiction of this action is not founded on diversity of citizenship and some of the named plaintiffs are incarcerated in the Southern District of New York.

## THE PARTIES

### The Plaintiffs

16. Plaintiff, William Gordon (hereinafter "Gordon") is a prisoner in the custody of the New York Sate Department of Correctional Services at the Woodbourne Correctional Facility. Gordon's Inmate number is 95A-0033. Gordon is serving a sentence of 13 1/4 to 40 years pursuant to his conviction of the crimes of attempted murder,

criminal possession of a weapon and assault. On March 13, 2007 Gordon was denied parole release for the first time. This adverse determination of the Board of Parole reads as follows:

> All factors considered, the panel concludes
> that you are a poor candidate for early release.

17. Gordon filed a Notice of Appeal within the proscribed period of 30 days and thereafter perfected his appeal on or about July 24, 2007.

18. Plaintiff Andre Combs, (hereinafter "Combs") is a prisoner in the custody of the New York State Department of Correctional Services at Mohawk Correctional Facility. Combs Inmate Number is 74B0737. Combs is serving a sentence of 15 years to life pursuant to his conviction of the crimes of Manslaughter and Murder. On December 5, 2006, Combs was denied parole release for the eighth time. This adverse determination of the Board of Parole reads as follows:

> you demonstrated little insight into your actions and
> accept limited responsibility for your violence...[y]our
> excessive violence and total disregard for others in the
> community militates against discretionary release

19. Combs filed a Notice of Appeal within the proscribed period of 30 days and thereafter perfected his appeal on or about May 31, 2007.

20. Plaintiff Robert DiDonato, (hereinafter "DiDonato") is a prisoner in the custody of the New York State Department of Correctional Services at Cayuga Correctional Facility. DiDonato's Inmate Number is 97A4213. DiDonato is serving a sentence of 8 years to life pursuant to his conviction of the crimes of Robbery and attempted assault. On January 30, 2007, DiDonato was denied parole release for the second time. This adverse determination of the Board of Parole reads as follows:

> ...notwithstanding the fact that you have been issued a
> certificate of earned eligibility...there is a reasonable

> probability that if released at this time you will not live
> and remain at liberty without violating the law and your
> release is not compatible with the welfare of society.

21. DiDonato filed a Notice of Appeal within the proscribed period of 30 days and thereafter perfected his appeal on or about July 21, 2007.

22. Plaintiff Delano Brown, (hereinafter "Brown") is a prisoner in the custody of the New York State Department of Correctional Services at Mt. McGregor Correctional Facility. Brown's Inmate Number is 81A4887. Brown is serving a sentence of 20 years to life pursuant to his conviction of the crimes of murder. On May 10, 2006, Brown was denied parole release for the fourth time. This adverse determination of the Board of Parole reads as follows:

> your release to supervision at this time would
> deprecate the serious nature of your instant offense
> and undermine respect for the law . . .

23. Brown filed a Notice of Appeal within the proscribed period of 30 days and thereafter perfected the appeal on or about January 11, 2008

24. The Defendant failed to render a decision within the proscribed period of 120 days on each of the appeals and/or the Defendants failed at all to render a decision on the appeals of plaintiffs.

25. The Plaintiffs were never advised that in the event that their appeals were not decided within the requisite 120 days that they could immediately thereafter institute an Article 78 Proceeding challenging their parole denials. See Plaintiff's Exhibit "A".

26. That as a result of the foregoing, an enumerable amount of the class members' reappearance hearings were reached prior to their having filed Article 78 Petitions challenging their parole release denials.

27. That as a result of the foregoing, an enumerable amount of the class members' Article 78 Proceedings were rendered moot by virtue of their reappearance hearings having been reached prior to decisions being rendered thereon.

### The Defendants

28. The Defendant George Alexander, (hereinafter "Alexander") was designated by the Governor to serve as Chairman and Chief Executive Officer of the New York State Division of Parole. Defendant Alexander is being sued in his official capacity only.

29. The Defendant, New York State Division of Parole, is an agency within the Executive Department of the State of New York and includes a 19-member Board of Parole that has the responsibility for determining whether parole-eligible prisoners in the custody of the New York State Department of Correctional Services will be released on parole supervision.

30. The Appeal's Unit of the New York State Division of Parole is an arm of the 19-member Board of Parole that has the responsibility for determining decisions on administrative parole appeals.

### CLASS ACTION ALLEGATIONS

31. The members of the class are estimated to be in the thousands and are therefore so numerous as to render joinder impracticable.

32. During the aforesaid described period of time a substantially significant preponderance of administrative appeals and, upon information and belief, an amount in excess of 98 per cent, were denied.

33. Upon information and belief, during the aforesaid described period of time a substantially significant preponderance of all administrative appeals were decided without consideration and application of the applicable statutory and regulatory factors.

34. Upon information and belief, during the aforesaid described period of time, a substantially significant preponderance of Defendant's written denial decisions consisted of citing generalized principles of statutory and case law, absent any application to the individual facts and circumstances of each inmate's case.

35. Joinder is impracticable because all of the members of the proposed main

class are incarcerated and, upon information and belief, many of them are indigent and non-English speaking and will most likely have great difficulty pursing their constitutional claims individually.

36. Questions of law and fact common to the proposed main class include whether the defendants' alleged unofficial illegal policy/practice violates the class members' rights to due process and equal protection of the law under the Fourteenth Amendment to the United States Constitution and whether such unofficial illegal policy/practice violates the right to be free from ex post facto enhancement of punishment under U.S. Const. Article 1, Section 10, cl. 1. More specifically, whether such rights have been violated by (1) not advising inmates denied parole release, absent that a decision on their administrate appeals being rendered within the mandated 120-day period of time, of the right to immediately institute Article 78 proceedings challenging their denials; (2) forcing inmates to incur a substantial delay in time and expending legal fees and courts costs by failing to fulfill there statutory and regulatory duties and responsibilities by rendering decisions in the mandates statutory and regulatory period of time;  (3) denying a substantially significant preponderance of all such appeals without considering and applying the mandated statutory and regulatory factors; (4) rendering decisions without any consideration of the circumstances and facts of each individual  inmates case; and (5) rendering written decisions that in a substantially significant preponderance of cases spew generalized principles of law without referencing any consideration and application to the statutory and regulatory factors or individual circumstances and factors of each such case.

37. The named plaintiffs are adequate representatives of the proposed class. The constitutional violations alleged by the named plaintiffs stem from the same course of conduct by the defendants – namely, the defendant's policy/practice as alleged above. The legal theories under which the named plaintiffs seek relief are the same as that upon which the class will rely. In addition, the harm suffered by the named plaintiffs is typical of the harm suffered by the proposed class members; to wit, the denial of a full, fair and balanced

administrative appeal decision rendered consistent with mandated statutory and regulatory law, and, a rendering of said decisions within the mandated statutory and regulatory period of time and/or notification to inmates that in the event said decisions are not rendered within the proscribed period of time, Article 78 proceedings may be immediately instituted so as to provide the opportunity to timely litigate such proceedings and obviate reappearance hearings from rendering same moot.

38. The named plaintiffs have the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of their fellow class members.

39. The named plaintiffs are represented by Stephen N. Dratch of the law firm of Dratch & Franzblau, P.C. This law firm has the resources, experience and expertise to diligently prosecute this class action and they do not have any knowledge of any conflicts among the members of the class or between any of the class members and counsel.

40. The class action is superior to other available methods for the fair and efficient adjudication of this controversy because (1) the prosecution of hundreds of separate actions would be inefficient and wasteful of judicial resources; (2) the members of the class are located throughout the State prison system and are not likely to be able to vindicate and enforce their constitutional and statutory rights unless this action is maintained as a class action; (3) the issues raised can be more fairly and efficiently resolved in the context of a single action rather than piece-meal litigation in the context of separate actions; (4) the resolution of litigation in a single forum will avoid the danger and resultant confusion of possible inconsistent determinations; (5) the prosecution of separate actions would create the risk of inconsistent and varying adjudications with respect to individuals pursuing claims against defendants which would establish incompatible standards of conduct for defendants; (6) Defendants have acted and will act on grounds applicable to all class members making final declaratory and injunctive relief on behalf of all members

necessary and appropriate; and (7) questions of law and/or fact common to members of the class predominate over any questions that will effect individual class members.

### The Sub-Class

41. Upon information and belief, a large percentage of the class members were sentenced to less than the statutory maximum terms of imprisonment allowed by law. Consequently, the Appeals Unit of Defendant Parole Board has been acting and continues to act as a "second sentencing court" by determining that the nature of the present offense of each sub-class member requires incarceration for a longer period of time than the minimum term imposed by the sentencing court, regardless of the prisoner's institutional record.

42. The named Plaintiffs are adequate representatives of the proposed sub-class. The constitutional violations alleged by each of these named plaintiff's stems from the same course of conduct affecting the sub-class- namely the defendant's unofficial policy of affirming denials of parole release for inmate's without providing them adequate opportunity to timely challenge their denials in Article 78 Proceedings and rendering such appeal decisions absent consideration and application of the proscribed statutory and regulatory factors or of the individual facts and circumstances of each case. The legal theories under which the named plaintiff's seek relief are the same as that upon which the sub-class will rely. In addition, the harm suffered by the named plaintiffs are typical of the harm suffered by the proposed sub-class members; to wit, the denial of fair consideration of parole release administrative appeals conducted pursuant to the provisions of 9 NYCRR 8006 et. seq. and N.Y.S. Executive Law Section 259-I, and, the denial of adequate opportunity to timely challenge the denials in Article 78 Proceedings.

43. The additional questions of law and fact common to the proposed sub-class, but not common to the main class, is whether the adverse appeal determinations and failure to provide adequate opportunity to timely challenge such determinations made pursuant to the defendant's unofficial illegal policy/practice unlawfully usurp and

supercede the sentences fixed by the courts and effectively constitute unauthorized second determinations as to the amount of punishment to be imposed upon each sub-class member by virtue of his or her present offense and criminal history.

## STATEMENT OF THE CLAIMS

### The Class

44.     For at least the past ten years, and upon information and belief for many years prior thereto, Defendants have been (1) failing to decide administrative appeals of parole denials within the 120-day period proscribed by statute and regulation; (2) have failed to decide appeals with proper consideration to relevant statutory and regulatory mandated factors and the individual facts and circumstances of each case.

45.     The failure to decide appeals within the statutorily and regulatory proscribed period and/or the failure to decide such appeals without proper consideration to relevant statutory and regulatory mandated factors has and continues to occur pursuant to an un official illegal policy/practice implemented and proscribed by Defendants.

46.     This unofficial policy violates the express mandates of N.Y.S. Executive Law Section 250-i, which provides that parole release decisions must be based upon the following factors:

       a.    the seriousness of the offense with due consideration to the type of sentence, length of sentence, and recommendations of the sentencing court, the district attorney, the attorney for the inmate, the pre-sentence probation report as well as consideration of any mitigating and aggravating circumstances, and activities following arrest and prior to confinement;

       b.    prior criminal record, including the nature and pattern of offenses, adjustment to any previous probation or parole supervision and institutional confinement;

       c.    the inmates institutional record, including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interpersonal relationships with staff and inmates;

       d.    performance, if any, as a participant in a temporary release program;

      e.    release plans including community resources, employment, education and training and support services available to the inmate;

      f.    any deportation order issued against the inmate;

      g.    any statement made to the Board by the victim of the crime.

47. This unofficial policy/practice of the Defendants violates the express mandates of Executive Law Section 259(i) which provides that:

> Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and this is release in not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for the law. In making the parole release decision, the guidelines adopted pursuant to subdivision four of section two hundred fifty nine-c of this article shall require that the following be considered: (i) the institutional record including programs goals and accomplishments, academic achievements, vocational education, training and work assignments, therapy and interpersonal relationships with staff and inmates; (ii) performance, if any, as a participant in a temporary release program; (iii release plans including community resources, employment, education and training and support services available to the inmate; (iv) any deportation order issued by the federal government regarding deportation against the inmate while in the custody of the department of correctional services and any recommendation regarding deportation made by the commissioner of the department of correctional services pursuant to section one-hundred forty-seven of the correction law; and (v) any statement made to the board by the crime victim or victim's representative, where the crime is deceased or is mentally or physically incapacitated.

48. The Defendant's unofficial illegal policy/practice precludes and/or substantially curtails the Parole Board Appeals' Unit of any full and meaningful consideration of the above enumerated statutory and regulatory mandated factors. Instead of fulfilling its statutory and regulatory mandated discretionary function in deciding

administrative appeals, the Defendant Parole Board Appeal's Unit, by its execution of the Defendants' unofficial policy, bases its administrative appeal decisions upon impermissible political, economic and other illegal factors.

49. As a result of the Defendant's unofficial illegal policy/practice, fair consideration of inmate's administrative appeals are eliminated, if not significantly curtailed. Additionally, the failure to render timely decisions results in inadequate time for inmates to litigate Article 78 Proceedings challenging their parole release denials. As a consequence of the imposition of such limitation, and to failure properly and adequately notify inmates of their right to initiate Article 78 proceedings challenging parole release denials where the administrative appeals are not determined within the 120 day period, such proceedings are either not initiated or, if initiated, are rendered moot by virtue of reappearance hearings being reached prior to determinations being rendered thereon.

50. The Defendant's unofficial illegal policy/practice, as executed by Defendant Parole Board Appeal's Unit, is in conflict with, and completely ignores, the rehabilitative goals embodied in the provisions of the N.Y.S. Executive Law and Penal Law and contravenes the discretionary scheme mandated by these statutes.

51. As a result of Defendant's policy, the affirmance of parole release denials to the class members and the failure to render timely statutorily and regulatory mandated appeal decisions has been and continues to be arbitrary and capricious, based upon impermissible political and economic and other illegal reasons and constitute flagrant and unauthorized action in violation of the plaintiffs' and class members and subclass members' right to due process guaranteed by the Fourteenth Amendment and their rights to access to the courts guaranteed by the First, Sixth and Fourteenth Amendments.

52. The Defendant's policy has brought about an ex post facto enhancement of

the punishments imposed upon the named plaintiffs and members of the prospective class at their respective sentencing and thus violates U.S. Const. Article 1, Section 10, cl.1.

WHEREFORE, Plaintiffs ask this Court to:

A.   Issue an order adjudging and declaring that the unofficial policy/practice of the Appeals Unit of defendant Parole Board violates the plaintiffs' and proposed class members' rights to due process of law guaranteed by the Fourteenth Amendment to the United States Constitution and said plaintiffs and the proposed class and sub-class members' rights to access the courts guaranteed by the First, Sixth, and Fourteenth Amendments  More specifically that such violation is occasioned by Defendants (1) failing in a substantially significant preponderance of administrative appeal decisions to render timely statutory and regulatory mandated administrative appeal decisions from parole denials; and (2) failing in a substantially significant preponderance of administrative decisions to give proper consideration to the statutory and regulatory mandated factors and the individual facts and circumstances of each case; (3) failing to advise inmates denied by parole of their right to institute Article 78 proceedings absent administrative appeal decisions rendered within the 120 days of their submission.

C.   Issue a permanent injunction perpetually enjoining and restraining the Defendants and all those in active concert or participation with them from rendering untimely statutory and regulatory mandated administrative appeal decisions from parole release denials and from rendering appeal decisions without giving fair consideration to the statutory and regulatory mandated factors and the individual facts and circumstances of each case.

D.   Issue an order directing the plaintiffs' and proposed class members' immediate reconsideration of their last administrative appeal decisions to be made in

accordance with the mandates of, and solely for the purpose underlying, NYS Executive Law Section 259-i.

    E.    Award plaintiffs the costs and disbursements of this action;

    F.    Award plaintiffs reasonable attorney fees; and

    G.    Grant plaintiffs such further and other relief as to this Court may seem just and proper.

DATED: New York, New York
         June 23, 2008

                               FRANZBLAU DRATCH, P.C.
                               *Attorneys for Plaintiff*
                               233 Broadway, Suite 2701
                               New York, York, New York 10279
                               (212) 571-1808

                               BY: _____
                                   STEPHEN N. DRATCH

# NOTICE OF RIGHT OF APPEAL

You have the right to appeal any final decision of the Board of Parole or an Administrative Law Judge and you have the right to the assistance of counsel in perfecting your appeal.

To appeal a final decision of the Board or an Administrative Law Judge, you must file a Notice of Appeal within 30 days of your receipt of the decision notice by sending the Notice of Appeal to:

> New York State Board of Parole
> Appeals Unit
> 97 Central Avenue
> Albany, New York 12206

You have four months from the date your Notice of Appeal is filed to perfect your appeal, unless an extension is granted for good cause upon written request within the four month filing period. Your appeal may be perfected by submitting three copies of your brief on appeal or three copies of a letter which contains the specific grounds of your appeal and the ruling(s) challenged. The brief or letter should contain a section which must include all pertinent documents and the transcript of your hearing if they are necessary to the determination of your appeal. Please only send your brief or letter when it is completed. DO NOT send parts of your appeal at different times. Failure to submit your perfected appeal within four months or any extension thereof after the filing of your Notice of Appeal will result in the dismissal of your appeal with prejudice.

Once your perfected appeal is received, it will be investigated and a statement of findings prepared. You can expect that it will take approximately two to four months to prepare the statement of findings. Once the statement of findings is prepared by the Appeals Unit, it will be submitted to an appellate panel of the Board of Parole for decision. Once a decision is rendered by the Board, a copy of the decision, and the Appeals Unit's findings will be forwarded to you and your attorney, if applicable.

Questions on Appeal:

A  Release Denial, Rescission or Final Revocation Determination:

   1. Whether the proceeding and/or determination was in violation of lawful procedure, was affected by an error of law, was arbitrary and capricious or was otherwise unlawful.

   2. Whether the determination relied on erroneous information as shown in the record of the proceeding or relevant information was not available for consideration.

   3. Whether the determination was excessive.

B  Final Revocation or Rescission Determination – Additional Ground for Appeal:

   Whether the determination was supported by a preponderance of the evidence subject to the limitation that evidentiary rulings will be considered only if a timely objection was made at the hearing.