UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

WILLIAM GORDON, ANDRE COMBS,
ROBERT DIDONATO, and DELANO
BROWN, as individuals and on behalf of all
other similarly situated,

                    Plaintiffs,

        - against -

GEORGE ALEXANDER, Chairman of the
New York State Division of Parole, and THE
NEW YORK STATE DIVISION OF
PAROLE,

                    Defendants.

------------------------------------------------------- X

USDC SDNY
DOC....
DATE .... 1/5/09

**OPINION AND ORDER**

**08 Civ. 5673 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.      INTRODUCTION

William Gordon, Andre Combs, Robert Didonato, and Delano Brown

(collectively "plaintiffs"), individuals currently serving indeterminate sentences in

New York State prisons, bring the instant suit as individuals and on behalf of all

others similarly situated against George Alexander, Chairman of the New York

State Division of Parole, and the New York State Division of Parole (collectively

1

"defendants"). This lawsuit addresses the procedures governing parole determinations in New York State.

Defendants now move to dismiss the entirety of plaintiffs' complaint. While plaintiffs raise a number of potentially meritorious claims, none have been pled or argued with the requisite specificity. Therefore, for the reasons stated below, defendants' motion to dismiss is granted in full with leave to replead certain claims.

## II.    BACKGROUND

Plaintiffs are individuals currently incarcerated in the New York State correctional system. Gordon is serving a thirteen year and three month to forty year sentence, Combs is serving a fifteen year to life sentence, DiDonato is serving an eight year to life sentence, and Brown is serving a twenty year to life sentence.[1] Each recently sought parole and received a cursory denial from the Board of Parole.[2] For example, the adverse determination issued to Gordon states, "All factors considered, the panel concludes that you are a poor candidate for early release."[3]   Brown's denial states, "[Y]our release to supervision at this time

---

[1]    *See* Complaint ¶¶ 16, 18, 20, 22.

[2]    *See id.*

[3]    *Id.* ¶ 16.

2

would deprecate the serious nature of your instant offense and undermine respect for the law . . . ."[4]

Each plaintiff filed a notice of appeal within thirty days of receiving notice of his parole determination and perfected his appeal within four months of filing notice.[5]  The Division of Parole did not render a decision on any of the named plaintiffs' parole appeals within 120 days of perfection of the appeal.[6]  Nor did the Division of Parole inform plaintiffs of any legal effect of the failure to resolve an appeal within 120 days.[7]

Plaintiffs allege that the results – or non-results – of their appeals are reflective of the broader practices of Division of Parole.[8]  They also allege that the Division of Parole maintains a broader policy or practice of failing "to render decisions that consider and apply existing statutory and regulatory factors."[9] Rather, they claim the Division of Parole "spew[s] generalized principles of

---

[4]     *Id.* ¶ 22.

[5]     *See id.* ¶¶ 17, 19, 21, 23.

[6]     *See id.* ¶ 24.

[7]     *See id.* ¶ 25.

[8]     *See id.* ¶ 6.

[9]     *Id.*

3

statutory, regulatory and case law without applying same to the individual facts and circumstances of each appeal."[10] As a result, named plaintiffs claim that they are deprived of rights guaranteed by the Due Process Clause of the Fourteenth Amendment – including due process, equal protection, and trial by jury – as well as the Ex Post Facto Clause of article I, section 10 of the U.S. Constitution.

Plaintiffs' arguments can be distilled into three distinct claims. *First*, plaintiffs assert that defendants' routine failure to resolve administrative appeals within 120 days of perfection of an appeal violates due process guarantees ("the Timeliness Claim"). *Second*, plaintiffs claim that defendants' failure to advise parole appellants of the right to institute judicial proceedings if the Parole Board fails to render a decision within 120 days violates their right to access the courts ("the Failure to Advise Claim"). *Third*, plaintiffs claim that defendants' routine failure to give proper consideration to statutory and regulatory factors and the individual facts of each parole appeal yields arbitrary decisions and enhances sentences in violation of due process, jury rights, and protections against ex post facto punishment ("the Proper Consideration Claim").

---

[10]     *Id.*

4

## III.   APPLICABLE LAW

### A.    Motion to Dismiss

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, a court must "'accept as true all of the factual

allegations contained in the complaint'"[11] and "draw all reasonable inferences in

the plaintiff's favor."[12]   A complaint must provide "the grounds upon which [the

plaintiff's] claim rests through factual allegations sufficient 'to raise a right to

relief above the speculative level'"[13] in order to survive a motion to dismiss.

Although the complaint need not provide "detailed factual allegations,"[14] it must

---

[11]      *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1975
(2007) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n.1 (2002)).

[12]      *Ofori-Tenkorang v. Am. Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir.
2006).

[13]      *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)
(quoting *Twombly*, 127 S. Ct. at 1965). *Accord Erickson v. Pardus*, , — U.S. —,
127 S. Ct. 2197, 2200 (2007) (per curiam) (noting that plaintiffs must "'give the
defendant fair notice of what the . . . claim is and the grounds upon which it
rests'") (quoting *Twombly*, 127 S. Ct. at 1955).

[14]      *Twombly*, 127 S. Ct. at 1970.

nonetheless "amplify a claim with some factual allegations . . . to render the claim *plausible*."[15] "[B]ald assertions and conclusions of law will not suffice."[16]

### B.    New York Parole Appellate Procedure

New York law establishes that a parole applicant may appeal an adverse determination to the state Division of Parole.[17] "The appeal process is initiated by the filing of a notice of appeal within 30 days of the date that the inmate . . . or his attorney receives written notice of the final decision from which the appeal is taken."[18] "The appeal shall be perfected within four months of the date of filing of the notice of appeal"[19] "by the filing with the appeals unit of . . . a brief, letter or other written document that shall state the rulings challenged and

---

[15]     *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007), *cert. granted*, 128 S. Ct. 2931 (2008).

[16]     *Law Offices of Curtis V. Trinko, LLP v. Bell Atlantic Corp.*, 309 F.3d 71, 74 (2d Cir. 2002) (citation omitted).

[17]     *See* N.Y. Exec. L. § 259-i(a) ("Except for [certain determinations related to release violations], all determinations made [by the State Board of Parole] may be appealed in accordance with rules promulgated by the board.").

[18]     9 N.Y. Comp. Codes R. & Regs. § 8006.1(b) (establishing the requirement that appellants file a notice of appeal within thirty days).

[19]     *Id.* § 8006.2(a). *See also id.* § 8006.2(f) ("If, after the expiration of four months . . . the appeal is not perfected, it will automatically be dismissed with prejudice.").

shall explain the basis for the appeal."[20]  The appeals unit of the Division of Parole

reviews perfected appeals and either deems them moot or "issue[s] written

findings of fact and/or law and recommend[s] disposition of the appeal."[21]  The

recommendation is then reviewed by a three-member panel of the Board of Parole,

a majority of which "may affirm, modify or reverse the decision."[22]

The Division of Parole is required by both statute and regulation to

assess several factors when making a discretionary recommendation concerning

release.  First, it must assess two factors related to prior criminality: the

seriousness of the offense and the prisoner's criminal history, including

"adjustment to any previous probation or parole supervision."[23]  It must then

assess five factors related to rehabilitation and potential success after release:

> (i) the institutional record including program goals and
> accomplishments, academic achievements, vocational
> education, training or work assignments, therapy and
> interpersonal relationships with staff and inmates; (ii)
> performance, if any, as a participant in a temporary release
> program; (iii) release plans including community resources,
> employment, education and training and support services
> available to the inmate; (iv) any deportation order issued

---

[20]     *Id.* § 8006.2(b).

[21]     *Id.* § 8006.4(a).

[22]     *Id.* § 8006.4(b), (e).

[23]     N.Y. Exec. L. § 259-i(1)(a).

7

> by the federal government against the inmate . . .; and (v)
> any statement made to the board by the crime victim or the
> victim's representative . . . .[24]

The Division of Parole is "not required to give each factor equal weight" or "to

specifically articulate in its decision each factor it considered."[25]

The New York Executive Law states, "The rules of the board may

specify a time within which any appeal shall be taken and resolved."[26]  Although

the Parole Board has chosen to limit the time to initiate and to perfect an appeal, as

described above, it has not set similarly strict limits for the resolution of appeals.

Rather, it has established a rule of constructive exhaustion of administrative

remedies: "Should the appeals unit fail to issue its findings and recommendation

within four months of the date that the perfected appeal was received, the

appellant may deem this administrative remedy to have been exhausted and

thereupon seek judicial review of the underlying determination from which the

appeal was taken."[27]

---

[24]     *Id.* § 259-i(2)(c)(A).

[25]     *Blasich v. N.Y. State Bd. of Parole*, 852 N.Y.S.2d 469, 470 (3d Dep't 2008). *Accord Siao-Pao v. Dennison*, 854 N.Y.S.2d 348, 351 (1st Dep't 2008) (same).

[26]     N.Y. Exec. L. § 259-i(1)(a).

[27]     9 N.Y. Comp. Codes R. & Regs. § 8006.4(c).

Judicial review of a parole determination is available in an Article 78 proceeding in New York State Supreme Court.[28]  Specifically, New York courts will reverse a determination of the Parole Board "when the Board's decision to deny parole was arbitrary or capricious."[29]  However, if a prisoner reappears before the Parole Board for biennial review before judicial review of the previous parole denial is concluded, the Article 78 proceeding will be dismissed as moot.[30]

### C.    Due Process and Parole

"The Due Process Clause of the Fourteenth Amendment requires that, generally, a person must be afforded the opportunity for a hearing prior to being deprived of a constitutionally protected liberty or property interest."[31]  However, "procedural due process protects only important and substantial expectations in life, liberty, and property."[32]  "[A]lthough 'liberty and property are broad and

---

[28]    *See, e.g., Brower v. Alexander*, 867 N.Y.S.2d 801, 802 (3d Dep't 2008).

[29]    *Silmon v. Travis*, 95 N.Y.2d 470, 476 (2000).

[30]    *See Rodriguez v. N.Y. State Div. of Parole*, 867 N.Y.S.2d 359, 360 (3d Dep't 2008) (citing *Johnson v. N.Y. State Div. of Parole*, 861 N.Y.S.2d 601 (3d Dep't 2008)).

[31]    *Patterson v. City of Utica*, 370 F.3d 322, 329 (2d Cir. 2004).

[32]    *N.Y. State Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 164 (2d Cir. 2001).

majestic terms,' . . . 'the range of interest protected by procedural due process is not infinite.'"[33]

  "In order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate expectancy of release that is grounded in the state's statutory scheme."[34] "The New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release. . . . Accordingly, [prisoners] have no liberty interest in parole, and the protections of the Due Process Clause are inapplicable."[35] Moreover, "state

---

[33]  *Spanierman v. Hughes*, 576 F. Supp. 2d 292, 301-02 (D. Conn. 2008) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 571-72 (1972)).

[34]  *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001) (citing, *inter alia*, *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 11-13 (1979)).

[35]  *Id. Accord Russo v. New York State Bd. of Parole*, 50 N.Y.2d 69, 75 (1980) (concluding that the New York parole system does not create a reasonable expectancy of release at any given time prior to the conclusion of the maximum term of a indeterminate sentence). The Supreme Court's 2005 decision in *Wilkinson v. Austin* held that the methodology on which *Barna v. Travis* relied no longer governs analysis of the presence of a liberty interest in parole. *See* 545 U.S. 209, 229 (2005) ("*Sandin* [*v. Conner*] abrogated *Greenholtz's* and *Hewitt* [*v. Helms*]*'s* methodology for establishing the liberty interest"). However, *Sandin v. Conner* expressly held that the changed analytical framework did not require a state-by-state reconsideration of the liberty interest in parole. *See* 515 U.S. 472, 484 n.5 (1995); *see also Wilkinson*, 545 U.S. at 222 (finding that a liberty interest in parole is "state-created" albeit subject to the limitations established in *Sandin*). The Supreme Court's seemingly contradictory decision in *Sandin* binds this Court.

statutes do not create federally protected due process entitlements to specific state-mandated procedures."[36]

However, regardless of the statutory framework of procedural protections and legitimate expectations, prisoners have a liberty interest against imposition of any "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[37]  The Supreme Court recently suggested that a categorical determination that an inmate serving an indeterminate sentence is permanently ineligible for parole may constitute imposition of such an "atypical and significant hardship" sufficient to create a constitutional liberty interest.[38]

**D.    Access to Courts and Proper Instruction**

The state need not confer sufficient legal resources upon prison populations to "enable the prisoner to discover grievances, and to litigate effectively once in court."[39]  However, due process requires state officials to furnish prisoners with "'*adequate* law libraries or *adequate* assistance from

_____

[36]    *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003).

[37]    *Sandin*, 515 U.S. at 484.

[38]    *Wilkinson*, 545 U.S. at 223-24.

[39]    *Lewis v. Casey*, 518 U.S. 343, 354 (1996).  *Accord id.* ("To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is effectively to demand permanent provision of counsel, which we do not believe the Constitution requires.").

11

persons trained in the law.'"[40]  "The point is to provide prisoners with the tools

they 'need in order to attack their sentences, directly or collaterally, and in order to

challenge the conditions of their confinement.'"[41]  "To establish a violation, 'the

inmate . . . must . . . demonstrate that the alleged shortcomings in the library or

legal assistance program hindered his efforts to pursue a legal claim.'"[42]

### E.     Jury Rights and Parole

The Supreme Court held in *Apprendi v. New Jersey*, that "[o]ther than

the fact of a prior conviction, any fact that increases the penalty for a crime

beyond the prescribed statutory maximum must be submitted to a jury, and proved

beyond a reasonable doubt."[43]  No court within this Circuit has ruled on the

applicability of *Apprendi* to parole determinations or indeterminate sentencing.[44]

---

[40]     *Id.* at 356 (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977))
(finding that capability to bring valid challenges is the touchstone for analysis).

[41]     *Bourdon v. Loughren*, 386 F.3d 88, 93 (2d Cir. 2004) (quoting *Lewis*,
518 U.S. at 355).

[42]     *Id.* (quoting *Lewis*, 518 U.S. at 351).

[43]     *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

[44]     *See generally* W. David Bell, *Heinous, Atrocious, and Cruel:*
Apprendi, *Indeterminate Sentencing, and the Meaning of Punishment*, 109 Colum.
L. Rev. (forthcoming 2009).

### F.    Ex Post Facto Punishment and Parole

One of the few restrictions on state power contained in the

unamended text of the U.S. Constitution is a bar on passage of ex post facto

laws.[45]  "[A] repealer of parole eligibility previously available to imprisoned

offenders would clearly present the serious question under the ex post facto clause

. . . of whether it imposed a 'greater or more severe punishment than was

prescribed by law at the time of the . . . offense.'"[46]

## IV.   DISCUSSION

### A.    Timeliness Claim

"Regrettably, delay is a natural concomitant of our administrative

bureaucracy."[47]  Nevertheless, "delay can be so unreasonable as to deny due

process . . . ."[48]  The first premise of the Timeliness Claim is that the Due Process

Clause of the Fourteenth Amendment mandates a baseline level of process for

---

[45]      *See* U.S. Const. art. I, § 10.

[46]      *Warden v. Marrero*, 417 U.S. 653, 663 (1974) (quoting *Rooney v. North Dakota*, 196 U.S. 319, 325 (1905)).  *Accord Durant v. United States*, 410 F.2d 689, 691 (5th Cir. 1969) ("It may be 'legislative grace' . . . to provide for parole but when [a legislature] expressly removes all hope of parole upon conviction and sentence for certain offences, . . . this is in the nature of an additional penalty.").

[47]      *Isaacs v. Bowen*, 865 F.2d 468, 477 (2d Cir. 1989) (citations omitted).

[48]      *Id.*

13

consideration of parole. This Court is bound, however, by the determination of the

Second Circuit that the New York State parole system does not vest prisoners with

a liberty interest protected by the Fourteenth Amendment.[49]  Thus no process is

constitutionally mandated, and on that ground alone, a claim alleging

constitutionally burdensome delay must fail.[50]  Defendants' motion to dismiss the

Timeliness Claim is granted.

### B.     Failure to Advise Claim

The core of the Failure to Advise Claim is that defendants must

inform inmates that they may institute judicial review if parole appeals are not

resolved within 120 days. Standing alone, this allegation is insufficient to support

a due process claim. While state officials must provide adequate facilities and

adequate assistance for prisoners to pursue their claims, due process does not

---

[49]     *See Barna*, 239 F.3d at 171.  Furthermore, plaintiffs concede that they
have neither a constitutional right to parole nor a protected liberty interest in their
parole determination. *See* Memorandum of Law in Opposition to Defendants'
Motion to Dismiss ("Pl. Mem.") at 11.

[50]     It is worth noting that the 120-day rule does not create a deadline by
which the Parole Board must render a decision on parole appeals.  Rather, it
*allows* judicial review by establishing constructive exhaustion of administrative
remedies, increasing the amount of process available to a prisoner requesting
parole.  There is no due process claim to be had here; thus plaintiffs are denied
leave to replead this claim.

14

require state officials to provide legal advice to facilitate a prisoner's claim.[51]

Defendants' motion to dismiss the Failure to Advise Claim is granted.[52]

### C.    Proper Consideration Claim

Plaintiffs' final claim is also their most troubling. For the purpose of

a motion to dismiss, this Court must accept as true plaintiffs' contention that

---

[51]    *Cf. Holt v. Werholtz*, 185 Fed. Appx. 737, 740 (10th Cir. 2006)
(distinguishing a non-meritorious failure to assist claim from valid denial of access
claims); *Marengo v. Conway*, 342 F. Supp. 2d 222, 230 (S.D.N.Y. 2004) (holding
that lack of notice of a denial of leave to appeal a state court conviction does not
mandate tolling of the statute of limitations in a federal habeas action).

[52]    Other facts suggested by the complaint – along with supplemental
materials that plaintiffs have placed before the Court but failed to include in the
complaint – indicate that plaintiffs may have a valid, albeit inadequately pled
claim. Because the state provides a notice of the right to appeal that instructs
prisoners of some rights but not others, supported by adequate allegations this
notice could be interpreted as an active obstruction rather than a mere failure to
provide adequate facilities and assistance. *See Benjamin v. Frasier*, 264 F.3d 175,
184 (2d Cir. 2001) ("'[R]egulations and practices that unjustifiably obstruct . . .
aspects of the right of access to the courts are invalid.'") (quoting *Procunier v.
Martinez*, 416 U.S. 396, 419 (1974), *overruled on other grounds by Thornburgh v.
Abbott*, 490 U.S. 401 (1989)). Moreover, while plaintiffs have made a class-wide
allegation that state court actions are mooted by the delay resulting from the
failure to inform appellants of their right to initiate an Article 78 proceeding if an
appeal is not resolved in 120 days, *see* Complaint ¶ 49, they must tie this claim to
the experiences of a named plaintiff. *See Avent v. New York*, 157 Fed. Appx. 375,
377 (2d Cir. 2005) (noting that the Court of Appeals specifically directed an
inmate appellant to brief specific harm to a legal claim that would have been
prevented by proper assistance or facilities). Should plaintiffs desire to replead,
they must be able to allege these or similar facts. Otherwise repleading would be
futile.

administrative appeals of parole decisions are predetermined on the basis of an arbitrary policy or practice instituted some time after their convictions.   Plaintiffs challenge this policy as a violation of due process, jury rights, and the bar on ex post facto punishment.   These aspects of the claim will be addressed in turn.

### 1.    Due Process

Plaintiffs argue that even in the absence of a due process right to particular procedures, parole actions may not turn on arbitrary or impermissible rationales.  Plaintiffs specifically rely on dicta in the 2003 decision by a judge of this court in *Boddie v. New York State Division of Parole* and the holding of the 1991 decision of the Eleventh Circuit Court of Appeals in *Monroe v. Thigpen*.[53] These decisions both assert that even in the absence of a liberty interest in parole, arbitrary or unauthorized action by a Parole Board "becomes constitutionally offensive."[54]

Arbitrary action by state actors does not always generate a constitutional due process claim.[55]  The existence of a constitutionally cognizable

---

[53]      *See* Pl. Mem. at 11-12 (citing *Boddie v. N.Y. State Div. of Parole*, 285 F. Supp. 2d 421, 428 (S.D.N.Y. 2003) and *Monroe v. Thigpen*, 932 F.2d 1437, 1443 (11th Cir. 1991)).

[54]      *Monroe*, 932 F.2d at 1441.

[55]      *See, e.g., Clubside, Inc. v. Valentin*, 468 F.3d 144, 158 (2d Cir. 2006).

life, liberty, or property interest is the prerequisite for a constitutional standard of

adequate process.  In those instances, there is no constitutional baseline.[56]  Where

no process at all is required, the government decision-maker may use absolute

discretion – even the discretion to render decisions on arbitrary or irrational bases

– without violating constitutional due process requirements.[57]

          Precisely because the Due Process Clause does not universally protect

against arbitrary government action, the federal government and the State of New

York have filled the gaps with statutory guarantees of rational decision-making.[58]

That being said, federal statutes do not protect against arbitrary action at the state

---

[56]      A close reading of *Monroe* shows that the Eleventh Circuit did not
reach a contrary conclusion.  In order to avoid disturbing a previous holding,
*Monroe* disclaimed a constitutional liberty interest in parole under Alabama law.
*See Monroe*, 932 F.2d at 1442 (citing *Thomas v. Sellers*, 691 F.2d 487, 489 (11th
Cir. 1982)).  Nevertheless, the court found that the Alabama parole system created
an expectancy of a parole determination without reliance on false information.  *See
id.* (citing *Thomas*, 691 F.2d at 489).  This created the limited liberty interest on
which *Monroe* relied.  This Court cannot take a similar route, as it is bound by the
definitive holding that New York creates "*no* liberty interest in parole."  *Barna*,
239 F.3d at 171 (emphasis added).

[57]      It is worth noting that an arbitrary or irrational decision to deny a
particular category of prisoners parole – such as those whose names begin with the
letter S – would not survive even rational basis review under the Equal Protection
Clause.  *See, e.g., Collier v. Barnhart*, 473 F.3d 444, 449 (2d Cir. 2007) (quoting
*Nordlinger v. Hahn*, 505 U.S. 1, 11-12 (1992)).

[58]      *See* 5 U.S.C. § 706(2)(A); N.Y. CPLR § 7803(3).

level. To the extent that plaintiffs wish to attack defendants' decisions based on their sheer arbitrariness, plaintiffs must assert those claims in state court.[59] The due process aspect of the Proper Consideration Claim is therefore dismissed.[60]

### 2. Jury Rights

Plaintiffs' complaint also suggests that the failure to consider the proper factors when resolving parole appeals violates the Sixth Amendment right to trial by jury. However, plaintiffs have failed to defend this aspect of the complaint in their brief. Therefore this argument is waived and the Sixth Amendment aspect of the Proper Consideration Claim is dismissed.[61]

---

[59]   *See Board of Managers v. City of New York*, No. 01 Civ. 1226, 2004 WL 1982520, at *28 (S.D.N.Y. Sept. 8, 2004) ("[D]istrict courts in this circuit have consistently declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over Article 78 claims.") (citing, *inter alia*, *Cartagena v. City of New York*, 257 F. Supp. 2d 708, 710 (S.D.N.Y. 2003), and *Birmingham v. Ogden*, 70 F. Supp. 2d 353, 372 (S.D.N.Y. 1999)).

[60]   Plaintiffs are granted leave to replead the due process aspect of the Proper Consideration Claim only if they can allege as a factual matter – consistent with Rule 11 – that parole appeals are governed by an unofficial policy or practice that effectively eliminates the possibility of parole for prisoners serving indeterminate sentences based on "stale and static factor[s]." *See Hayward v. Marshall*, 512 F.3d 536, 546-47 (9th Cir.), *rehearing en banc granted*, 512 F.3d 536 (9th Cir. 2008).

[61]   Plaintiffs are granted leave to replead the Sixth Amendment aspect of this claim only if they can allege as a factual matter that defendants' policy or practice of arbitrary decision-making includes fact-finding not conducted by the jury and that this policy or practice increases the penalty for their crimes beyond the statutory maximum.

### 3.    Ex Post Facto

Finally, the complaint suggests that the failure to consider the proper

factors when resolving parole appeals violates the constitutional bar on ex post

facto punishment.   Similarly, plaintiffs have failed to defend this aspect of the

complaint in their brief.   Therefore, this argument is waived and the Ex Post Facto

Clause aspect of the Proper Consideration Claim is dismissed.[62]

## V.    CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in

full.  Because plaintiffs' complaint hints at potentially cognizable claims, plaintiffs

are granted leave to replead.  An Amended Complaint may be filed within thirty

(30) days of the date of this Order.  If no such Amended Complaint is filed, the

Clerk of the Court will be directed to close this case.   The Clerk of the Court is

directed to close this motion (Docket No. 6).

SO ORDERED:

Dated:  New York, New York          Shira A. Scheindlin
        January 5, 2009             U.S.D.J.

---

[62]    Similarly, plaintiffs are granted leave to replead the Ex Post Facto
Clause aspect of this claim only if they can allege as a factual matter that after
plaintiffs were convicted, defendants implemented an inflexible policy or practice
that increased the punishment for their crimes.

## - Appearances -

**For Plaintiffs:**

Stephen N. Dratch, Esq.
Franzblau Dratch, P.C.
233 Broadway, Suite 2700
New York, New York 10279
(212) 571-1808

**For Defendants:**

Frederick Hongyee Wen
Daniel A. Schulze
Assistant Attorneys General
120 Broadway
New York, New York 10271
(212) 416-6536

20