**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- X

WILLIAM GORDON, ANDRE COMBS,
ROBERT DIDONATO, DELANO BROWN,
and STEVEN DENNEHY as individuals and
on behalf of all other similarly situated,

                 **Plaintiffs,**

     - against -

HENRY LEMONS, JR., Chairman of the
New York State Division of Parole, and THE
NEW YORK STATE DIVISION OF
PAROLE,

               **Defendants.**

------------------------------------------------------- X

<u>**OPINION AND ORDER**</u>

**08 Civ. 5673 (SAS)**



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/24/09

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

       William Gordon, Andre Combs, Robert Didonato, Delano Brown, and

Steven Dennehy (collectively "plaintiffs") bring the instant suit as individuals and

on behalf of all others similarly situated against Henry Lemons, Jr., Chairman of

the New York State Division of Parole, and the New York State Division of Parole

(collectively "defendants").[1]  This lawsuit addresses the procedures governing parole determinations in New York State.

Plaintiffs filed the instant suit on June 24, 2008.  On January 5, 2009, this Court granted defendants' motion to dismiss in full, with leave to replead a subset of plaintiffs' claims.[2]  On April 1, 2009, plaintiffs filed an amended complaint, adding an additional plaintiff and bolstering their claims with additional allegations.  Defendants now move to dismiss plaintiffs' amended complaint.  Despite substantial guidance provided by the Court in the January 5 opinion, plaintiffs have failed to plead with the specificity necessary to survive a motion to dismiss.  For the reasons stated below, defendants' motion to dismiss is granted.

## II.    BACKGROUND

Plaintiffs are individuals currently incarcerated in the New York State correctional system.  Gordon is serving a thirteen year and three month to forty year sentence, Combs is serving a fifteen year to life sentence, DiDonato is serving an eight year to life sentence, Brown is serving a twenty year to life sentence, and

---

[1]    Lemons has been substituted for George Alexander, former Chairman of the New York State Division of Parole, pursuant to Federal Rule of Civil Procedure 25(d).

[2]    *See Gordon v. Alexander*, 592 F. Supp. 2d 644 (S.D.N.Y. 2009).

2

Dennehy is serving a ten year to life sentence.[3]  Each recently sought parole and received a cursory denial from the Board of Parole.[4]  For example, the adverse determination issued to Gordon states, "All factors considered, the panel concludes that you are a poor candidate for early release."[5]  Brown's denial states, "[Y]our release to supervision at this time would deprecate the serious nature of your instant offense and undermine respect for the law . . . ."[6]

Each plaintiff filed a notice of appeal within thirty days of receiving notice of his parole determination and perfected his appeal within four months of filing notice.[7]  The Division of Parole did not render a decision on any of the named plaintiffs' parole appeals within 120 days of perfection of the appeal.[8]  Nor did the Division of Parole inform plaintiffs of any legal effect of the failure to resolve an appeal within 120 days.[9]

---

[3]   *See* Amended Complaint ("Am. Compl.") ¶¶ 18, 20, 22, 24, 26.

[4]   *See id.*

[5]   *Id.* ¶ 18.

[6]   *Id.* ¶ 24.

[7]   *See id.* ¶¶ 19, 21, 23, 25, 27.

[8]   *See id.* ¶ 29.

[9]   *See id.* ¶ 30.

Plaintiffs allege that the outcome of their appeals reflect the broader practices of the Division of Parole.[10]  They also allege that the Division of Parole maintains a policy or practice of failing "to render decisions that consider and apply existing statutory and regulatory factors."[11]  Rather, they claim the Division of Parole "spew[s] generalized principles of statutory, regulatory and case law without applying same to the individual facts and circumstances of each appeal."[12]  As a result, named plaintiffs claim that they are deprived of rights guaranteed by the Due Process Clause of the Fourteenth Amendment – including due process, equal protection, and trial by jury – as well as the Ex Post Facto Clause of article I, section 10 of the U.S. Constitution.

Plaintiffs' arguments can be distilled into three distinct claims.  *First*, plaintiffs assert that defendants' routine failure to resolve administrative appeals within 120 days of perfection of an appeal violates due process guarantees ("the Timeliness Claim").  *Second*, plaintiffs claim that defendants' failure to advise parole appellants of the right to institute judicial proceedings if the Parole Board fails to render a decision within 120 days violates their right to access the courts

---

[10]     *See id.* ¶ 6.

[11]     *Id.*

[12]     *Id.*

4

("the Failure to Advise Claim"). *Third*, plaintiffs claim that defendants' routine failure to give proper consideration to statutory and regulatory factors and the individual facts of each parole appeal yields arbitrary decisions and enhances sentences in violation of due process, jury rights, and protections against ex post facto punishment ("the Proper Consideration Claim").[13]

Plaintiffs' amended complaint buttresses their claims in three ways. *First*, plaintiffs have added an additional named plaintiff – Steven Dennehy – whose factual circumstances are distinguishable from those of the original four plaintiffs. Specifically, the Appeals Unit of the Division of Parole resolved Dennehy's appeal twenty-one months after he had perfected his appeal and only three months prior to his next parole board appearance.[14] Plaintiffs argue that had Dennehy filed an Article 78 petition after the resolution of his administrative appeal, the Article 78 proceeding would have been mooted by his next parole board appearance, rendering the appeal futile.[15]

---

[13]    This Court dismissed the Timeliness claim with prejudice but granted leave to replead the Failure to Advise Claim and the Proper Consideration Claim. *See Gordon*, 592 F. Supp. 2d at 651 n.50, 653-54 nn.60-62.  Plaintiffs nevertheless repled all three claims.

[14]    *See* Am. Compl. ¶ 28.

[15]    *See id.*

5

*Second*, plaintiffs have attached four new exhibits to their complaint.[16] The first is a copy of a decision of the New York Supreme Court for Albany County, in which Justice Edward A. Sheridan noted the policy of then-Governor George Pataki "to curtail parole for all violent felons."[17] The second is the text of a speech given by Vernon Manley, a former member of the New York State Board of Parole, in which Manley describes the cursory process of parole board hearings and the lack of adequate training for members of the board of parole.[18] The third is a 2007 report concerning the history of parole in New York State, including a note that the parole rate for A1 felonies at that time was approximately three percent.[19] The fourth is a decision in a parole appeal, which consists almost entirely of string citations to decisions of the Court of Appeals and the Third Department.[20]

---

[16]    *See id.* ¶ 7.

[17]    *Chan v. Travis*, No. 3045-02, slip op. at 10 (N.Y. Sup. Ct. Albany County Feb. 7, 2003), Ex. B to Am. Compl.

[18]    *See* 2/15/07 Testimony of Vernon Manley, Ex. C to Am. Compl.

[19]    *See* Cheryl L. Kates, *Policy Report: An Analysis of Current NYS Parole Policy*, at 8 (2007), Ex. D to Am. Compl.

[20]    *See* 1/2/08 Administrative Appeal Decision Notice, Ex. E to Am. Compl.

*Third*, plaintiffs have added allegations based on statistics produced by the state in response to a Freedom of Information Law request.[21]   Plaintiffs now allege that the Appeals Unit affirms over ninety-seven percent of the Parole Board's denials of release.[22]

## III.   APPLICABLE LAW

### A.   Motion to Dismiss

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "accept as true all of the factual allegations contained in the complaint"[23] and "draw all reasonable inferences in the plaintiff's favor."[24]  However, the court need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness."[25]

---

[21]     N.Y. Pub. Off. Law §§ 84-90.

[22]     *See* Am. Compl. ¶ 7(ii).

[23]     *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 572 (2007).  *Accord Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009).

[24]     *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

[25]     *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation omitted).

To survive a 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility."[26] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[27] Plausibility "is not akin to a probability requirement," rather plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[28] Pleading a fact that is "merely consistent with a defendant's liability" does not satisfy the plausibility standard.[29]

## B.    New York Parole Appellate Procedure

New York law establishes that a parole applicant may appeal an adverse determination by the Parole Board to the state Division of Parole.[30] "The appeal process is initiated by the filing of a notice of appeal within 30 days of the date that the inmate . . . or his attorney receives written notice of the final decision

---

[26]    *See Twombly*, 550 U.S. at 564.

[27]    *Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1949 (2009) (quotation omitted).

[28]    *Id.* (quotation omitted).

[29]    *Id.* (quotation omitted).

[30]    *See* N.Y. Exec. L. § 259-i(a) ("Except for [certain determinations related to release violations], all determinations made [by the State Board of Parole] may be appealed in accordance with rules promulgated by the board.").

8

from which the appeal is taken."[31]  "The appeal shall be perfected within four

months of the date of filing of the notice of appeal"[32] "by the filing with the

appeals unit of . . . a brief, letter or other written document that shall state the

rulings challenged and shall explain the basis for the appeal."[33]  The Appeals Unit

of the Division of Parole reviews perfected appeals and either deems them moot or

"issue[s] written findings of fact and/or law and recommend[s] disposition of the

appeal."[34]  The recommendation is then reviewed by a three-member panel of the

Board of Parole, a majority of which "may affirm, modify or reverse the

decision."[35]

        The Division of Parole is required by both statute and regulation to

assess several factors when making a discretionary recommendation concerning

release.  First, it must assess two factors related to prior criminality: the

seriousness of the offense and the prisoner's criminal history, including

---

[31]    9 N.Y. Comp. Codes R. & Regs. § 8006.1(b) (establishing the
requirement that appellants file a notice of appeal within thirty days).

[32]    *Id.* § 8006.2(a). *See also id.* § 8006.2(f) ("If, after the expiration of
four months . . . the appeal is not perfected, it will automatically be dismissed with
prejudice.").

[33]    *Id.* § 8006.2(b).

[34]    *Id.* § 8006.4(a).

[35]    *Id.* § 8006.4(b), (e).

"adjustment to any previous probation or parole supervision."[36]  It must then

assess five factors related to rehabilitation and potential success after release:

> (i) the institutional record including program goals and
> accomplishments, academic achievements, vocational
> education, training or work assignments, therapy and
> interpersonal relationships with staff and inmates; (ii)
> performance, if any, as a participant in a temporary release
> program; (iii) release plans including community resources,
> employment, education and training and support services
> available to the inmate; (iv) any deportation order issued
> by the federal government against the inmate . . .; and (v)
> any statement made to the board by the crime victim or the
> victim's representative . . . .[37]

The Division of Parole is "not required to give each factor equal weight" or "to

specifically articulate in its decision each factor it considered."[38]

The New York Executive Law states, "The rules of the board may

specify a time within which any appeal shall be taken and resolved."[39]  Although

the Parole Board has chosen to limit the time to initiate and to perfect an appeal, as

described above, it has not set similarly strict limits for the resolution of appeals.

---

[36]     N.Y. Exec. L. § 259-i(1)(a).

[37]     *Id.* § 259-i(2)(c)(A).

[38]     *Blasich v. N.Y. State Bd. of Parole*, 852 N.Y.S.2d 469, 470 (3d Dep't
2008). *Accord Siao-Pao v. Dennison*, 854 N.Y.S.2d 348, 351 (1st Dep't 2008)
(same).

[39]     N.Y. Exec. L. § 259-i(1)(a).

Rather, it has established a rule of constructive exhaustion of administrative remedies: "Should the appeals unit fail to issue its findings and recommendation within four months of the date that the perfected appeal was received, the appellant may deem this administrative remedy to have been exhausted and thereupon seek judicial review of the underlying determination from which the appeal was taken."[40]

Judicial review of a parole determination is available in an Article 78 proceeding in New York State Supreme Court.[41] Specifically, New York courts will reverse a determination of the Parole Board "when the Board's decision to deny parole was arbitrary or capricious."[42] However, if a prisoner reappears before the Parole Board for biennial review before judicial review of the previous parole denial is concluded, the Article 78 proceeding will be dismissed as moot.[43]

## C. Due Process and Parole

---

[40] 9 N.Y. Comp. Codes R. & Regs. § 8006.4(c).

[41] *See, e.g., Brower v. Alexander*, 867 N.Y.S.2d 801, 802 (3d Dep't 2008).

[42] *Silmon v. Travis*, 95 N.Y.2d 470, 476 (2000).

[43] *See Rodriguez v. N.Y. State Div. of Parole*, 867 N.Y.S.2d 359, 360 (3d Dep't 2008) (citing *Johnson v. N.Y. State Div. of Parole*, 861 N.Y.S.2d 601 (3d Dep't 2008)).

11

"The Due Process Clause of the Fourteenth Amendment requires that, generally, a person must be afforded the opportunity for a hearing prior to being deprived of a constitutionally protected liberty or property interest."[44] However, "procedural due process protects only important and substantial expectations in life, liberty, and property."[45] "[A]lthough 'liberty and property are broad and majestic terms,' . . . 'the range of interest protected by procedural due process is not infinite.'"[46]

"In order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate expectancy of release that is grounded in the state's statutory scheme."[47] "The New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release. . . . Accordingly, [prisoners] have no liberty interest in parole, and the

---

[44]    *Patterson v. City of Utica*, 370 F.3d 322, 329 (2d Cir. 2004).

[45]    *N.Y. State Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 164 (2d Cir. 2001).

[46]    *Spanierman v. Hughes*, 576 F. Supp. 2d 292, 301-02 (D. Conn. 2008) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 571-72 (1972)).

[47]    *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001) (citing, *inter alia*, *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 11-13 (1979)).

protections of the Due Process Clause are inapplicable."[48]  Moreover, "state

statutes do not create federally protected due process entitlements to specific state-

mandated procedures."[49]

Regardless of the statutory framework of procedural protections and

legitimate expectations, prisoners have a liberty interest against imposition of any

"atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life."[50]  The Supreme Court recently suggested that a

categorical determination that an inmate serving an indeterminate sentence is

---

[48]     *Id.  Accord Russo v. New York State Bd. of Parole*, 50 N.Y.2d 69, 75
(1980) (concluding that the New York parole system does not create a reasonable
expectancy of release at any given time prior to the conclusion of the maximum
term of a indeterminate sentence).  The Supreme Court's 2005 decision in
*Wilkinson v. Austin* held that the methodology on which *Barna v. Travis* relied no
longer governs analysis of the presence of a liberty interest in parole.  *See* 545
U.S. 209, 229 (2005) ("*Sandin* [*v. Conner*]  abrogated *Greenholtz's* and *Hewitt* [*v.
Helms*]*'s* methodology for establishing the liberty interest").  However, *Sandin*
expressly held that the changed analytical framework did not require a state-by-
state reconsideration of the liberty interest in parole.  *See* 515 U.S. 472, 484 n.5
(1995).  *See also Wilkinson*, 545 U.S. at 222 (finding that a liberty interest in
parole is "state-created" albeit subject to the limitations established in *Sandin*).
The Supreme Court's seemingly contradictory decision in *Sandin* binds this Court.

[49]     *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003).

[50]     *Sandin*, 515 U.S. at 484.

permanently ineligible for parole may constitute imposition of such an "atypical and significant hardship" sufficient to create a constitutional liberty interest.[51]

## D.     Access to Courts and Proper Instruction

The state need not confer sufficient legal resources upon prison populations to "enable the prisoner to discover grievances, and to litigate effectively once in court."[52]   However, due process requires state officials to furnish prisoners with "'*adequate* law libraries or *adequate* assistance from persons trained in the law.'"[53]   "The point is to provide prisoners with the tools they 'need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.'"[54]   "To establish a violation, 'the inmate . . . must . . . demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.'"[55]

---

[51]     *Wilkinson*, 545 U.S. at 223-24.

[52]     *Lewis v. Casey*, 518 U.S. 343, 354 (1996). *Accord id.* ("To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is effectively to demand permanent provision of counsel, which we do not believe the Constitution requires.").

[53]     *Id.* at 356 (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)) (finding that capability to bring valid challenges is the touchstone for analysis).

[54]     *Bourdon v. Loughren*, 386 F.3d 88, 93 (2d Cir. 2004) (quoting *Lewis*, 518 U.S. at 355).

[55]     *Id.* (quoting *Lewis*, 518 U.S. at 351).

14

## E.    Jury Rights and Parole

The Supreme Court held in *Apprendi v. New Jersey*, that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[56]  No court within this Circuit has ruled on the applicability of *Apprendi* to parole determinations or indeterminate sentencing.[57]

## F.    Ex Post Facto Punishment and Parole

One of the few restrictions on state power contained in the unamended text of the U.S. Constitution is a bar on passage of ex post facto laws.[58]  "[A] repealer of parole eligibility previously available to imprisoned offenders would clearly present the serious question under the ex post facto clause . . . of whether it imposed a 'greater or more severe punishment than was prescribed by law at the time of the . . . offense.'"[59]

---

[56]    *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

[57]    *See generally* W. David Bell, *Heinous, Atrocious, and Cruel: Apprendi, Indeterminate Sentencing, and the Meaning of Punishment*, 109 Colum. L. Rev. 893 (2009).

[58]    *See* U.S. Const. art. I, § 10.

[59]    *Warden v. Marrero*, 417 U.S. 653, 663 (1974) (quoting *Rooney v. North Dakota*, 196 U.S. 319, 325 (1905)). *Accord Durant v. United States*, 410 F.2d 689, 691 (5th Cir. 1969) ("It may be 'legislative grace' . . . to provide for parole but when [a legislature] expressly removes all hope of parole upon

15

## IV.   DISCUSSION

### A.     Timeliness Claim

As noted above, this Court previously dismissed the Timeliness

Claim with prejudice.  I will not speculate as to why plaintiffs repled this claim in

their amended complaint – however, they have declined to defend this claim in

their opposition papers.  This claim is again dismissed with prejudice.

### B.     Failure to Advise Claim

The core of the Failure to Advise Claim asserts that defendants must

inform inmates that inmates may institute judicial review if parole appeals are not

resolved within 120 days.  Standing alone, this allegation is insufficient to support

a due process claim.  While state officials must provide adequate facilities and

adequate assistance for prisoners to pursue their claims, due process does not

require state officials to provide legal advice to facilitate a prisoner's claim.[60]

_____

conviction and sentence for certain offences, . . . this is in the nature of an
additional penalty.").

[60]      *Cf. Holt v. Werholtz*, 185 Fed. Appx. 737, 740 (10th Cir. 2006)
(distinguishing a non-meritorious failure to assist claim from valid denial of access
claims); *Marengo v. Conway*, 342 F. Supp. 2d 222, 230 (S.D.N.Y. 2004) (holding
that lack of notice of a denial of leave to appeal a state court conviction does not
mandate tolling of the statute of limitations in a federal habeas action).

In its January 5 opinion, this Court pointed defendants to the specific elements necessary to plead a valid Failure to Advise claim.[61]  Plaintiffs do not allege that the late notice constituted an active obstruction of their ability to advance a valid claim.[62]  Rather, they continue to assert that the absence of effective notice *eliminated* their appellate rights.  This pleading is insufficient as a matter of law.  Absent an active obstruction by defendants, there is simply no cognizable claim.  No action by defendants *eliminated* plaintiffs' appellate rights.  Therefore defendants' motion to dismiss the Failure to Advise Claim is granted.[63]

### C.    Proper Consideration Claim

Plaintiffs have similarly failed to cure the deficiencies in the Proper Consideration Claim.  Although the Court finds plaintiffs' allegations of arbitrary

---

[61]    *See Gordon*, 592 F. Supp. 2d at 652 n.52.

[62]    Dennehy alleges only that he "was never advised," not that he was in some way actively obstructed by the absence of notice. Am. Compl. ¶ 28.

[63]    Notably, defendants point out that "[a]s of October, 2008, the Division [of Parole] responds to any inmate who appeals to the Appeals Board with a letter" providing notice of appellate rights and the time frame for constructive exhaustion.  Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Amended Complaint at 3 (quoting 5/21/09 Affirmation of Terrence X. Tracy, defendants' attorney.  Although the Court need not turn to this alternative argument – as plaintiffs have failed to raise a viable due process claim – it additionally appears that defendants have provided plaintiffs with the precise relief they requested.

or capricious decision-making affecting the lives of thousands of state inmates,

their families, and their communities troubling, the allegations are not sufficient to

state a claim under either the Due Process Clause or the Ex Post Facto Clause.

## 1.    Due Process

Plaintiffs argue that even in the absence of a due process right to

particular procedures, parole actions may not turn on arbitrary or impermissible

rationales.  Plaintiffs specifically rely on dicta in the 2003 decision by a judge of

this court in *Boddie v. New York State Division of Parole* and the holding of the

1991 decision of the Eleventh Circuit Court of Appeals in *Monroe v. Thigpen*.[64]

Both of these decisions assert that even in the absence of a liberty interest in

parole, arbitrary or unauthorized action by a Parole Board "becomes

constitutionally offensive."[65]

Nevertheless, arbitrary action by state actors does not always generate

a constitutional due process claim.[66]  The existence of a constitutionally

---

[64]    *See* Pl. Mem. at 11-12 (citing *Boddie v. N.Y. State Div. of Parole*, 285
F. Supp. 2d 421, 428 (S.D.N.Y. 2003) and *Monroe v. Thigpen*, 932 F.2d 1437,
1443 (11th Cir. 1991)).

[65]    *Monroe*, 932 F.2d at 1441.

[66]    *See, e.g.*, *Clubside, Inc. v. Valentin*, 468 F.3d 144, 158 (2d Cir. 2006)
("[I]t is not the role of the federal courts to protect landowners from merely
arbitrary actions that are correctable by state remedies . . . ." (citing *Natale v. Town*

cognizable life, liberty, or property interest is the prerequisite for a constitutional

claim of denial of due process. In the absence of those interests, there is no

constitutional baseline.[67] Where no process at all is required, the government

decision-maker may use absolute discretion – even the discretion to render

decisions on arbitrary or irrational bases – without violating constitutional due

process requirements.[68]

Precisely because the Due Process Clause does not universally protect

against arbitrary government action, the federal government and the State of New

---

*of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999))).

[67]     A close reading of *Monroe v. Thigpen* – on which plaintiffs heavily
rely – shows that the Eleventh Circuit did not reach a contrary conclusion. In
order to avoid disturbing a previous holding, *Monroe* disclaimed that a prisoner
had a constitutional liberty interest in parole under Alabama law. *See* 932 F.2d at
1442 (citing *Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982)).
Nevertheless, the court found that the Alabama parole system created an
expectancy that a parole determination would not rely on false information. *See
id.* (citing *Thomas*, 691 F.2d at 489). This created the limited liberty interest
recognized in *Monroe*. This Court cannot take a similar route, as it is bound by
the definitive holding that New York creates "*no* liberty interest in parole."
*Barna*, 239 F.3d at 171 (emphasis added).

[68]     It is worth noting that an arbitrary or irrational decision to deny a
particular category of prisoners parole – such as those whose names begin with the
letter S – would not survive even rational basis review under the Equal Protection
Clause. *See, e.g.*, *Collier v. Barnhart*, 473 F.3d 444, 449 (2d Cir. 2007) (quoting
*Nordlinger v. Hahn*, 505 U.S. 1, 11-12 (1992)).

York have filled the gaps with statutory guarantees of rational decision-making.[69]

That being said, federal statutes do not protect against arbitrary action at the state

level. To the extent that plaintiffs wish to attack defendants' decisions based on

their sheer arbitrariness, plaintiffs must assert those claims in state court.[70]

The due process aspect of the Proper Consideration Claim could

survive a motion to dismiss only if plaintiffs could "allege as a factual matter . . .

that parole appeals are governed by an unofficial policy or practice that effectively

eliminates the possibility of parole for prisoners serving indeterminate sentences

based on 'stale and static factor[s].'"[71] Although plaintiffs included significant

new allegations concerning parole appeals, the factors on which they rest, and the

absence of substantial consideration of individual cases, they also conceded that in

some percentage of cases, parole appeals are granted. Even inmates convicted of

---

[69]     *See* 5 U.S.C. § 706(2)(A); N.Y. CPLR § 7803(3).

[70]     *See Board of Managers v. City of New York*, No. 01 Civ. 1226, 2004
WL 1982520, at *28 (S.D.N.Y. Sept. 8, 2004) ("[D]istrict courts in this circuit
have consistently declined to exercise supplemental jurisdiction under 28 U.S.C. §
1367 over Article 78 claims.") (citing, *inter alia*, *Cartagena v. City of New York*,
257 F. Supp. 2d 708, 710 (S.D.N.Y. 2003), and *Birmingham v. Ogden*, 70 F. Supp.
2d 353, 372 (S.D.N.Y. 1999)).

[71]     *Gordon*, 592 F. Supp. 2d at 653 n.60 (quoting *Hayward v. Marshall*,
512 F.3d 536, 546-47 (9th Cir.), *rehearing en banc granted*, 512 F.3d 536 (9th
Cir. 2008)).

A1 felonies are sometimes paroled, albeit at a very small rate. Thus defendants have not effectively eliminated the possibility of parole entirely. The due process aspect of the Proper Consideration Claim is therefore dismissed.

### 2. Jury Rights

The Amended Complaint also suggests that the failure to consider the proper factors when resolving parole appeals violates the Sixth Amendment right to trial by jury. Plaintiffs failed to defend this aspect of the complaint in opposition to defendants' original motion to dismiss. Despite the fact that the Court both noted this fact and explained how this pleading might be remedied,[72] plaintiffs have *again* failed to even reference their Sixth Amendment claim in their brief. Therefore any Sixth Amendment argument is waived, and the Sixth Amendment aspect of the Proper Consideration Claim is dismissed.

### 3. Ex Post Facto

Finally, the Amended Complaint suggests that the failure to consider the proper factors when resolving parole appeals violates the constitutional bar on ex post facto punishment. Ex post facto punishment of an individual given an indeterminate sentence only occurs when – after conviction – the possibility of parole is eliminated entirely. Plaintiffs have not presented sufficient allegations to

---

[72]     *See id.* at 653 & n.61.

21

plausibly claim that parole is no longer possible; in fact they have conceded that a small percentage of individuals are routinely paroled, including even those convicted of A1 felonies.  Therefore, the Ex Post Facto Clause aspect of the Proper Consideration Claim is dismissed.

## V.    CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in full.  Plaintiffs have twice failed to present a cognizable claim.  Therefore, leave to replead is denied as futile.[73]  The Clerk of the Court is directed to close this motion (Docket No. 20) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
             July 21, 2009

---

[73]    *See Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 127 (2d Cir. 2007) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## - Appearances -

### For Plaintiffs:

Stephen N. Dratch, Esq.
Franzblau Dratch, P.C.
233 Broadway, Suite 2700
New York, New York 10279
(212) 571-1808

### For Defendants:

Frederick Hongyee Wen
Daniel A. Schulze
Assistant Attorneys General
120 Broadway
New York, New York 10271
(212) 416-6536